**SO ORDERED.**

**SIGNED this 26 day of September, 2007.**



_____
Dale L. Somers
**UNITED STATES BANKRUPTCY JUDGE**

_____

OPINION DESIGNATED FOR PRINT AND ON-LINE PUBLICATION

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

In re:

WILLIAM STEVEN BERG,                    CASE NO. 04-24482
                                         CHAPTER 7
              DEBTOR.

**MEMORANDUM OPINION AND ORDER ON
BARBARA BERG'S MOTION TO COMPEL COMPLIANCE WITH COURT ORDERS**

Before the Court is the Motion of Barbara Berg to Compel Bank of Blue Valley to Comply with this Court's Orders of April 15, 2005 & January 24, 2007 & for Determination if Bank of Blue Valley is in Contempt of Such Orders ("Motion"). Barbara Berg, the spouse of the Debtor, appears by Robert A. Kumin. The Bank of Blue Valley (hereafter "Bank" or "Blue Valley"), an unsecured creditor of the Debtor, appears by Paul M. Hoffmann, Stinson Morrison

Hecker LLP. Debtor, William Berg, appears by Carl R. Clark, Lentz & Clark, P.A. There are no other appearances.[1]

Barbara Berg moves the Court to compel Blue Valley to comply with a stipulation and a settlement agreement approved by the Court by orders filed on April 15, 2005 and January 24, 2007.[2] The April order approved a stipulation between the Chapter 7 Trustee, the Bergs, Tojaka, LLC (of which Debtor and Barbara Berg were the only two members), the Bank, and others regarding the sale of certain real property formerly owned by the Debtor. That property was the subject of a pre-petition state court fraudulent transfer litigation instituted by the Bank against Barbara Berg, Debtor, and Tojaka. The January order approved a global settlement between the Chapter 7 Trustee and the Bergs, to which the Bank did not object. Barbara Berg contends that the Orders approving the stipulation and the settlement agreement bar the Bank from continuing the state court fraudulent conveyance litigation against her. The Bank contends that the Orders bar it from pursuing only some of the remedies initially asserted but do not compel dismissal of the state fraudulent conveyance claim or other claims added by amendment of the initial petition.

The Motion stated Barbara Berg's position in detail. The Bank filed a thorough reply opposing the requested relief. On June 20, 2007, an evidentiary hearing was held. The Court invited additional briefs. After receipt of those briefs and replies thereto, the Court took the

---

[1] This Court has jurisdiction pursuant to 28 U.S.C. § 157(a) and §§ 1334(a) and (b) and the Standing Order of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's Bankruptcy judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective July 10, 1984. A motion for determination if a creditor is in contempt of court orders is a matter concerning administration of the estate which is a core proceeding which this Court may hear and determine as provided in 28 U.S.C. § 157(b)(2)(A). There is no objection to venue or jurisdiction over the parties.

[2] Doc. 152.

Motion under advisement. Having carefully considered the briefs, the evidence presented, and the arguments of counsel, the Court now rules that § 544(b) and the Court's prior Orders bar the Bank from continuing the state court fraudulent conveyance claim against Barbara Berg, but declines to enter sanctions against the Bank.

**FINDINGS OF FACT.**

On or about May 29, 2003, Debtor transferred real property located in Kansas City, Missouri, referred to by the parties as the Gregory Property or the Tojaka Property, from his individual name to William S. Berg and Barbara K. Berg, husband and wife, as tenants by the entirety. On or about July 10, 2003, Debtor and Barbara Berg transferred the Gregory Property to Tojaka, LLC, an entity owned entirely by the Barbara Berg and William Steven Berg Revocable Trust. On or about October 17, 2003, after the foregoing transfers, the Bergs provided the Bank with a joint personal financial statement certifying that Debtor owned the Gregory Property in his individual capacity. In alleged reliance on the financial statement, the Bank entered into an agreement changing the terms of certain loans to Brands Mart, an entity owned by Debtor, whose debts to the Bank were personally guaranteed by Debtor, but not by Barbara Berg. Blue Valley also entered into an additional loan transaction for $350,000 credit to Brands Mart.

On June 18, 2004, Blue Valley filed an action against Debtor, Barbara Berg, and Tojaka, LLC in the Circuit Court of Jackson County, Missouri, Case No. 04-CV-217893 (hereafter the "State Court Litigation"). The petition, which was in one count, alleged fraudulent conveyance of the Gregory Property. It prayed that the transfer be set aside, for an order attaching the property, judgment for the value of the property against Barbara Berg and Tojaka, compensatory

3

damages, attorneys fees, and for other related relief. On October 21, 2004, Debtor filed for relief under Chapter 7.[3] Barbara Berg is not a debtor in this or any separate bankruptcy proceeding. The bankruptcy filing stayed the State Court Litigation as to Debtor, and according to the Bank, "the relevant joinder and 'claims splitting' law prevented the Bank from then pursuing the ancillary and related claims now asserted by the Bank against Barbara Berg."[4]

The Chapter 7 Trustee negotiated a sale of the Gregory property, which was owned by Tojaka, in which the bankruptcy estate had a 54% interest. The sale was the subject of Stipulation Regarding Sale of Certain Real Property ("Stipulation"), to which the Chapter 7 Trustee, the Debtor, the Bank, Tojaka, Barbara Berg, and Sandra Berg were parties. The Stipulation, which was approved by order of the Court filed on April 15, 2005, approved the proposed sale and provided that the net proceeds of the sale would be placed in escrow; that any liens, claims, or interests of the parties in the property shall be transferred to the proceeds; and that upon entry of the Court order approving the stipulation, all claims in pending litigation that gave rise to *lis pendens* would be dismissed with prejudice. Specifically, paragraph 8(c), provided the following regarding the State Court Litigation:

> (c) The title report prepared by Assured Quality Title Company with respect to the Property indicates *lis pendens* filed by Bank and Sandra Berg. Upon entry of an Order approving the Stipulation, the Bank agrees to provide to the Trustee a Dismissal with Prejudice of all counts, claims, and demands within the *Bank of Blue Valley v. William S. Berg, et. al.*, Case No. 04CV217893,

---

[3] This case was filed before October 17, 2005, when most provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 become effective. All statutory references to the Bankruptcy Code are to 11 U.S.C. §§ 101 - 1330 (2004), unless otherwise specified. All references to the Federal Rules of Bankruptcy Procedure are to Fed. R. Bankr. P. (2004), unless otherwise specified.

[4] Doc. 161. Because it is not necessary to the resolution of Barbara Berg's motion, the Court does not consider the scope of the § 362 stay on the State Court Litigation.

4

> currently pending in the Circuit Court of Jackson County, Missouri ("the Bank Lawsuit"), that relate to the Property (the "Bank Dismissal"). . . . At the closing of the Sale, the Trustee will provide the Bank Dismissal . . . to the Assured Quality Title Company to file with the Circuit Court of Jackson County, Missouri.

The Bank's dismissal order was titled "Stipulation for Partial Dismissal with Prejudice" and was approved by counsel for the Trustee, Bank, Debtor, Tojaka, and Barbara Berg. It included the following:

> 5. The parties stipulate that the claims and demands in this lawsuit that relate solely to any liens, claims, interests or demands made by Plaintiff to the Tojaka Property shall be dismissed with prejudice.
> 6. All other remaining claims of Plaintiff against Defendants for their actions shall be prosecuted in the ordinary course and are preserved.

The Chapter 7 Trustee asserted various claims and causes of action against Debtor and Barbara Berg, including the filing of a nondischargeability complaint against the Debtor on November 21, 2005. Over a period of several months, the Trustee had discussions and settlement negotiations with the Bergs concerning all the Trustee's claims, including the disposition of the proceeds from the sale of the Gregory Property. At one point in the negotiations, Barbara Berg and Tojaka indicated that a release of the Bank's claims, apparently including those asserted in the State Court Litigation, would be required. Later they indicated they would go forward with the Trustee's settlement without inclusion of the Bank's claims.

A Settlement Agreement and Release ("Settlement Agreement") dated December 12, 2006, was entered into by and between the Chapter 7 Trustee, Debtor, Barbara Berg, Tojaka, LLC, and the Berg attorneys. The agreement includes the following definitions: "Berg Parties" means the Debtor, Barbara Berg, the Berg attorneys, the Berg children, and Tojaka, LLC; the

5

"demand" means the collective oral and written communications wherein the Trustee asserted various claims and causes of action against the Bergs; "lawsuit" means the dischargeability complaint filed by the Trustee against the Debtor; and the "Berg Claims" means "all claims being asserted by the Trustee against the Berg Parties, including, but not limited to the claims referenced in the Demand and the Lawsuit." The recitals include the following relevant provisions, which are incorporated into the body of the Settlement Agreement:

> WHEREAS, the Trustee is the sole party with authority and standing to pursue Bankruptcy Estate claims or institute any law suits on behalf of the Bankruptcy Estate to recover on claims, rights or causes of action of the Debtor, including without limitation, any claims, rights, or causes of action arising under sections 541, 542, 544, 547, 548, 549, and 550 of the Bankruptcy Code, as well as any causes of action or lawsuits against insiders of the Debtor that were vested in the Debtor at the time of filing;
> ***
> WHEREAS, based upon negotiations between the Trustee and the Bergs, the risks and costs involved in litigation, and the amount at issue, the Trustee and the Bergs have agreed to resolve the Berg Claims and any other potential claims against the Bergs on terms mutually acceptable to each party.

The paragraph defining the scope of the Trustee's release includes the following:

> . . . the Trustee hereby remises, covenants not to sue, and releases the Berg Parties from any and all manner of actions, causes of action, suits, proceedings, . . . demands, and all other claims of every kind, nature, and description, . . . whether based upon statutory law, common law, federal law, state law, local law, or otherwise, that the Trustee had or may have against the Berg Parties accruing or arising from the beginning of time to the day of the date of entry of the Settlement Order, including, but not limited to, all claims or causes of action arising out of, or in connection with, the Berg Claims.

At one point, the Bank requested a specific carveout of its claims against Barbara Berg from the scope of the release and requested inclusion of the following: "This agreement shall not

6

be construed as or deemed a waiver or release of any claims Bank of Blue Valley has against Barbara Berg or Tojaka, LLC, including but not limited to the action that currently pends in the Circuit Court of Jackson County, Missouri, . . .."  Counsel for the Trustee rejected this proposal, stating in part:

> . . . I don't wish to be dense here, but I don't see any claims the Bank personally has against Barbara that didn't become the Trustee's, except perhaps a fraud claim, since the only other claims in the law suit are fraudulent transfer claims against Barbara or Tojaka, which are the Trustee's claims.
>
> * * *
>
> If you want to have language that says the agreement doesn't waive or release any claims the Bank may have against Barbara, I certainly have no problem with it, but can't agree to tie it to the lawsuit.

The Settlement Agreement includes the following language barring creditor claims and reflecting the foregoing negotiations:

> . . . The obligations of the Berg Parties under this Agreement are conditioned upon entry of a Bankruptcy Court Order approving this Agreement that expressly states that all creditors of the Bergs are bound by this Agreement and are barred and prohibited from subsequently pursuing any and all manner of actions, causes of action, suits, proceedings, debts, dues, judgments, damages, . . . and all other claims of every kind, nature, and description, whatsoever, . . . whether based on statutory law, common law, federal law, state law, local law, or otherwise, that the Trustee is releasing herein.  The Agreement is not a waiver or release of any claims any creditors may have, if any, against the Berg Parties which are not being released by the Trustee herein.

   The Settlement Agreement was approved by Court order filed on January 24, 2007.  The Bank did not object, even though there was no carveout of the Bank's claims against Barbara Berg and all of the proceeds from the sale of the Gregory Property, including Barbara Berg's share, were transferred to the Trustee.  Counsel for the Bank who participated in the settlement

7

negotiations testified at the hearing. In his opinion, the Bank had claims against Barbara Berg which were independent of the Trustee's claims and the Trustee could not release the Bank's claims against Barbara Berg. The Court found this testimony to be credible.

On January 29, 2007, the Bank filed a First Amended Petition in the State Court Litigation against Barbara Berg. It asserted no claims against Debtor and Tojaka, who were defendants in the initial Petition. The amended petition against Barbara Berg is in three counts. The first is a fraudulent transfer claim regarding the Gregory Property substantially identical to that asserted in the initial Petition, with the exception that remedies specific to the real property are not included. The second count is for alleged fraudulent misrepresentation in a financial statement delivered by Barbara Berg on or about October 12, 2003 to the Bank before the filing of the bankruptcy which erroneously stated that the Gregory Property was an asset of the Debtor. The third is for negligent misrepresentation based upon the same financial statement.

**POSITIONS OF THE PARTIES.**

Barbara Berg contends that as a matter of bankruptcy law any and all claims against Barbara Berg relating to the allegedly fraudulent transfer of the Gregory Property were fully compromised and settled by the Court's orders of April 15, 2005 and January 24, 2007, approving the Settlement Agreement and the Bank has no surviving claims relating to the transfer of that property.[5] She requests that the Court rule that the Bank's filing of the Amended

---

[5] The Motion could be read to allege that the entire First Amended Petition is in contempt of this Court's orders. It argues that after the stipulation and settlement the Bank could no longer assert the fraudulent conveyance claim against Barbara Berg. Building upon this position, it next asserts that because the original petition asserted only one count, the fraudulent conveyance claim, and that claim became barred by the Orders, there was not a viable lawsuit pending on January 29, 2007 which could serve as the vehicle for filing an amended petition, which included for the first time the two counts relating to the allegedly false financial statement. At argument on June 20, 2007, counsel for Barbara Berg stated that issues before this Court relate only to count one of the amended petition and that if this Court were to rule in Barbara Berg's

8

Petition was a willful and intentional violation of the Orders and evidences contempt; that Barbara Berg be awarded legal fees, costs, and damages resulting from the violation, and that to deter such conduct the Bank's claim be disallowed or other sanctions ordered. The Bank responds that it has no intent to assert claims that were compromised by the Trustee, but some of the remedies it seeks in the fraudulent conveyance count, such as compensatory damages, punitive damages, and attorney fees, were not compromised by the Trustee.[6] It therefore asserts that it should not be held in contempt because it has not violated the Orders and that Barbara Berg not be granted the relief she seeks.

**ANALYSIS AND CONCLUSIONS OF LAW.**

**A. The Bank's assertion of a fraudulent transfer claim against Barbara Berg is barred by the Trustee's settlement.**

The Bank's initial state court petition alleged one count: A fraudulent conveyance claim under Missouri law against Debtor, Barbara Berg, and Tojaka relating to the transfer of the Gregory Property from Debtor to Barbara Berg, and then from Debtor and Barbara Berg to Tojaka. Missouri has adopted the Uniform Fraudulent Transfer Act (UFTA).[7] The remedies of creditors are avoidance of the transfer, attachment of the asset transferred, injunction,

---

favor her counsel could then appear before the state court judge and argue that "if there was no lawsuit, there was nothing for them to amend to add counts two and three and those need to be filed as a separate action." (Tr. June 20, 2007, p. 10).

[6] The Bank's amended petition, as its remedies for count I, also seeks the value of the Gregory Property. At oral argument it offered to dismiss that claim. The Court interprets the Bank's position to be that it seeks any compensation to which it is entitled subsequent to the Trustee's settlement of the § 544(b) claim for fraudulent transfer of the same property.

[7] Mo. Rev. Stat. § 428.005 (2007), *et. seq.*

9

appointment of a receiver, and "any other relief the circumstances may require."[8]  Under appropriate circumstances the creditor may be awarded attorney fees and punitive damages.[9]

Debtor filed for relief under Chapter 7 while the State Court Litigation was pending.  The filing gave rise to a stay under § 362 of any action against the Debtor or property of the Debtor.  It also vested in the Trustee the right to recover fraudulent transfers, under both § 548, which establishes a federal right of avoidance, and § 544(b), which grants the Trustee the right to pursue state law avoidance claim.  Section 544(b) provides that "the trustee may avoid any transfer of an interest of the debtor in property . . . that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title."  "[I]f any unsecured creditor could reach an asset of the debtor outside bankruptcy, the Trustee can use § 544(b) to obtain that asset for the estate.  As part of the estate, that asset is then divided among all unsecured creditors, not just the creditor who could have reached the asset outside bankruptcy."[10]  Claims under the UFTA are within the scope of §544(b).[11]  When there is at least one unsecured creditor holding an allowed claim and avoidance rights, the Trustee is vested with the exclusive right to pursue that claim.  The vesting of the right to set aside the transfer in the Trustee suspends the rights of all creditors to pursue the state law claim, and that right is not restored until the Trustee no longer has a viable claim or the court orders the claim restored to a

---

[8] Mo. Rev. Stat. § 428.039 (2007).

[9] *Volk Constr. Co. v. Wilmescherr Drusch Roofing Co.*, 58 S.W.3d 897 (Mo. App. 2001).

[10] *In re Leonard*, 125 F.3d 543, 544 (7th Cir. 1997).

[11] *E.g., Mazer v. Jones (In re Jones)*, 184 B.R. 377 (Bankr. D.N.M. 1995).

10

creditor.[12]  Although the Trustee's ability to avoid a transfer is determined by state law, federal law prescribes the available relief.  Pursuant to §550, the Trustee's recovery is limited to recovery of the property transferred, or its value, and does not include particular damages suffered by any individual unsecured creditor.[13]

In this case, the Bank is an unsecured creditor with grounds to avoid the transfer of the Gregory Property under the Missouri UFTA.  Accordingly, the Bank and Barbara Berg agree that the Chapter 7 Trustee was vested with the right under §544(b) to pursue the UFTA fraudulent conveyance claim against Barbara Berg.

Further, that right was exclusively vested in the Trustee.  "[T]he commencement of bankruptcy gives the trustee the right to pursue recovery of fraudulently conveyed assets to the exclusion of all creditors."[14]  Therefore, the Bank, an unsecured creditor of the Debtor who had an UFTA claim pending on the date of filing the bankruptcy, had no standing to continue the litigation during the pendency of the case.  Upon the filing of the bankruptcy not only was the Bank's action against the Debtor stayed pursuant to § 362.  It also had no right to pursue its UFTA claim against Barbara Berg and Tojaka.

---

[12] *Barber v. Westbay (In re Integrated Agri, Inc.)*, 313 B.R. 419, 427 (Bankr. C.D. Ill. 2004) (holding trustee is real party in interest until trustee relinquished 544(b) claim or trustee no longer has viable cause of action); *Klingman v. Levinson*, 158 B.R.109, 113 (D. N.D. Ill. 1993) (holding that creditors may step in when trustee no longer has a viable cause of action); *Liddle & Robinson, L.L.P. v. Daley (In re Daley)*, 224 B.R. 307, 310-311 (Bankr. S.D.N.Y. 1998)  (holding only trustee has standing to bring fraudulent conveyance claim unless a creditor or a creditor's committee has been given approval by the bankruptcy court to sue in the trustee's stead).

[13] *Kleven v. Stewart (In re Myers)*, 320 B.R. 667, 670 (Bankr. N.D. Ind. 2005).

[14] *In re Integrated Agri, Inc.*, 313 B.R. at 427.

11

The rule that the Trustee has the exclusive right to pursue fraudulent conveyance applies even though the remedies sought by the trustee and a creditor may differ. This rule is illustrated by *Sears Petroleum*,[15] where the court held that trustee's exclusive right to pursue a UFTA claim precluded an unsecured creditor from continuing a fraudulent conveyance claim even though Sears sought monetary damages and the Trustee sought avoidance of the transfer. Sears Petroleum originally brought suit for breach of contract and to recover assets against George Burgess, Anne Burgess, his wife, and others. During the pendency of the case, George Burgess filed for bankruptcy relief, and then both debtor and Anne Burgess died. The Chapter 7 Trustee of the Estate of the Burgess intervened in the action and filed a motion for summary judgment on several issues, including the allegation of pre-petition fraudulent transfer of funds from Debtor to Anne Burgess. The trustee asserted that only he and not Sears was entitled to pursue the claim. Sears responded that "it may rely on state law to seek monetary damages . . . while at the same time the Trustee may use bankruptcy law to bring an avoidance action."[16] The court found that the trustee's position was correct. "It is well-established that creditors may not 'vie with the bankruptcy trustee for the right to pursue fraudulent conveyance actions. To the contrary, the commencement of bankruptcy gives the trustee the right to pursue fraudulently conveyed assets *to the exclusion of all creditors*.'"[17]

Is this case, the Bank's standing to pursue the UFTA claim was cut off when the bankruptcy was filed. The question is whether it has been restored. The Court finds that it has

---

[15] *Sears Petroleum & Transp. Corp. v. Burgess Constr. Serv., Inc.,* 417 F. Supp.2d 212 (D. Mass. 2006).

[16] *Id.*, 417 F. Supp.2d at 221.

[17] *Id.* (quoting *Klingman v. Levinson*, 158 B.R. at 113).

12

not. The Trustee did not abandon the claim, it has not been determined that Trustee did not have a viable claim, and there is no court order allowing the Bank to pursue the claim. Rather, the Settlement Agreement forever released Barbara Berg from the UFTA claim relating the Gregory Property and barred the Bank from pursuing that claim. The Stipulation, Settlement Agreement, and Orders are unambiguous. First, in the April 15, 2005 Order, the Gregory Property was sold and all claims to the property were transferred to the proceeds. The Bank was a party to the Stipulation and, in accord with its terms, dismissed with prejudice its "claims and demands" in the State Court Litigation that "relate solely to any liens, claims, interests, or demands made" by the Bank to the property. Although the Stipulation did not settle the Trustee's claim under the UFTA, the second order filed on January 24, 2007 did. The Settlement Agreement, approved by the Court, expressly released Barbara Berg from all claims of the Trustee under § 544 and determined the distribution of the proceeds from the sale of the Gregory Property. Although the Bank was not a party to the agreement, it did participate in its negotiation and did not object to its approval. The agreement expressly provides that "all creditors of the Bergs are bound by this agreement and are barred and prohibited from subsequently pursuing any and all manner of actions, causes of action . . . whether based on statutory law, common law, federal law, state law, . . . or otherwise, that the Trustee is releasing herein." The language included in the settlement agreement in lieu of the carveout requested by the Bank merely reiterates that the agreement is not a release or waiver of any claims "which are not being released by the Trustee." The Bank asserts no arguments that it is not bound by the Settlement Agreement.

While the bankruptcy was pending and when the Settlement Agreement was negotiated and approved by the Court, the Trustee had the exclusive right to pursue UFTA claims, even

13

though the Trustee's remedies were determined under bankruptcy law rather than state law. It was the Trustee who as the real party in interest with standing to compromise the UFTA claim. In that capacity, he released Barbara Berg from "any and all manner of action, causes of action, suits, proceedings, . . . demands and all other claims of every kind, nature, and description, . . . that the Trustee had or may have against the Berg parties" under § 544(b), which claims included the Bank's UFTA claim. The Court finds that the order approving the Settlement Agreement, by approving Barbara Berg's release from liability under § 544(b), foreclosed restoration of the Bank's claim against Barbara Berg.

In opposition to this construction of the January Order and the Settlement Agreement, the Bank asserts that, although its claim to recover the Gregory Property is barred, it may pursue additional relief unique to itself, such as punitive damages, attorney fees, and interest.[18] The Court understands its argument to be that the scope of the release is limited to the remedies held by the Trustee and does not include all of the remedies available under the Missouri UFTA which the Bank proposes to litigate against Barbara Berg. The Bank is correct that the Trustee's remedies are more limited than those of the Bank. The Trustee's remedies for a § 544(b) claim against a transferee such as Barbara Berg are defined by § 550 and limited to recovery of the asset fraudulently transferred, or, if the court so orders, the value of the property.[19] Under the Missouri UFTA, a creditor who prevails of the allegations of fraudulent transfer may avoid the transfer or recover a judgment for the value of the asset transferred, but only "to the extent

---

[18] Count I of the First Amended Petition seeks judgment against Barbara Berg for the value of the Gregory Property. In arguments to this Court, the Bank does not argue that it may pursue this claim.

[19] The trustee's recovery is not limited to the amount recoverable had the creditor pursued the action. *Moore v. Bay*, 284 U.S. 4 (1931).

14

necessary to satisfy the creditor's claim."[20] The creditor may also obtain "any other relief the circumstances require," which the Missouri courts have held to include punitive damages and attorneys fees.[21]

The Bank's position presents a difficult question for which the Court has found no direct authority where the distinction between remedies available under the Code and state law were asserted to limit the scope of a § 544(b) release. However, there is authority that a release of a fraudulent transfer claim by the trustee is binding upon unsecured creditors and bars pursuing a state law action. In *In re Tessmer*,[22] the court held that the trustee's settlement of a § 544(b) fraudulent transfer claim against the transferee cutoff the rights of a creditor of the debtor to recover from the transferee for the same transfer. Prior to December 30, 1999, debtor Tessmer killed her husband. After being convicted of murder, she transferred a one-half, undivided remainder interest in property to her parents. Her former mother-in-law, Ms. Carringer, brought a wrongful death action against the debtor, who then filed a Chapter 7 petition. After the bankruptcy was filed, Ms. Carringer filed a fraudulent conveyance action against the debtor's parents. At the request of the trustee, the court permanently enjoined the fraudulent conveyance claim. The trustee then, over the objection of Ms. Carringer settled the fraudulent conveyance claim. The debtor's parents and the trustee then filed a joint motion to authorize the trustee to dismiss the state court fraudulent conveyance action. The motion was granted under the

---

[20] Mo. Rev. Stat. § 428.044 (2007). In some cases, these remedies may be more limited than the Trustee's, as the Trustee is entitled under § 550 to set aside the entire transfer or recover the value of the entire transfer without regard to the amount of the claims of unsecured creditors.

[21] *Volk Constr. Co. v. Wilmescherr Drusch Roofing Co.*, 58 S.W.3d at 897 (allowing punitive damages and attorney fees under the Missouri UFTA).

[22] *In re Tessmer*, 329 B.R. 776 (Bankr. M.D. Ga. 2005).

15

authority of §§ 544(b) and 105(a).  The court held that "[o]nce the Trustee acts under § 544(b), the rights of all other parties to bring suit based on the same transaction are fully and permanently cut off unless the Trustee later abandons his claim."[23]  In addition, the court held that even if § 544(b) did not usurp the rights to continue the action, an injunction against proceeding was a valid exercise of the court's § 105(a) power.

The terms of the Settlement Agreement relied upon by Barbara Berg are similar to those of confirmed Chapter 11 plans which have been held to bar state court UFTA claims by creditors against non-debtors.  In *In re PWS Holding*,[24] the confirmed reorganization plan expressly provided for the extinguishment of all avoidance claims accruing to the debtors and debtors in possession under §§ 502(d), 544, 545, 547, 548, 549, 550, and 551.  The provision was held to bar any Alabama UFTA related claims[25] against participants of a pre-petition leveraged recapitalization brought by the holder of subordinated notes of the debtor.  Similarly, in *In re Gentek*,[26] the plan released certain named third parties from "all claims or causes of action arising under Chapter 5 of the Bankruptcy Code" and enjoined all persons who held released claims from commencing or continuing any actions that were inconsistent with the plan.  The court relied upon *PWS Holding*s and held that the plan barred a creditor of the debtor from pursing fraudulent conveyance claims against parties released by the plan.

---

[23] *Id.*, 329 B.R. at 780.

[24] *In re PWS Holding Corp.*, 303 F.3d 308 (3rd Cir. 2002).

[25] *Id.*, 303 F.3d at 315.

[26] *In re Gentek, Inc.*, 328 B.R. 423 (Bankr. D. Del. 2005).

16

The well-established interpretation of § 544(b) and the purposes of the Bankruptcy Code support the construction of a release of a non-debtor transferee of a fraudulent conveyance from liability under § 544(b) as barring an unsecured creditor from pursuing any claims under the UFTA. As examined above, when a bankruptcy is filed, the rights of unsecured creditors to pursue a UFTA claim is cut off as to all remedies, not only those available to the Trustee. It follows from this principle that the Trustee controls the state law claim and may release a potential UFTA defendant from the entire claim, without regard to the specific remedies available under the Code. If it were as the Bank contends, and the nature of the remedy determines the Trustee's authority, there would be no basis to hold that all UFTA claims, without regard to remedy, are cut off by a bankruptcy filing or no basis to protect a non-debtor transferee from a multitude of post-bankruptcy law suits, even when the Trustee litigated and prevailed on a state law fraudulent conveyance claim. This Court finds that under § 544(b), the Trustee has the authority to release a potential UFTA defendant from claims by all unsecured creditors of the debtor, on whose behalf and for whose benefit fraudulently transferred property of the debtor may be recovered.

The purpose of § 544(b) and related avoidance provisions is "to consolidate all of the debtor's assets."[27] The Chapter 7 Trustee is charged with the duty to evaluate and, if beneficial to the estate, pursue avoidable transfers. Settlement with non-debtors involved in pre-petition acts is a valuable tool in fulfilling that duty. If the Trustee's release of such persons from liability under § 544 did not bar subsequent litigation by the debtor's unsecured creditors, expeditious administration of estates would be impaired. Unlike debtors who settle with the

---

[27] *N.L.R.B. v. Martin Arsham Sewing Co.*, 873 F.2d 884, 887 (6th Cir. 1989).

Trustee, non-debtor transferees have no expectation of discharge and must rely upon the terms of a settlement or res judicata to protect them from a multiplicity of suits.

For the foregoing reasons, the Court holds that the UFTA claim of the Bank against Barbara Berg is barred by the Chapter 7 Trustee's settlement with and release of Barbara Berg from all of the Trustee's claims under § 544. When Debtor's Chapter 7 petition was filed, the Trustee was vested with the state law UFTA claims of unsecured creditors, including the Bank. The Trustee had the sole right to pursue those claims for the benefit of the estate and to settle the same. Standing to pursue the UFTA claim was never restored to the Bank; rather Barbara Berg was released from all liability from state law avoidance claims. Expeditious administration of estates requires that a trustee's release of non-debtors from liability for avoidable transfer under § 544(b) be a bar to subsequent creditor actions against the same party with respect to the same transfer.

**B. The Bank's action in filing the amended Court I in the State Court Litigation was not in contempt of this Court's Order approving the Stipulation and the Settlement Agreement and no sanctions or fees will be imposed.**

Barbara Berg contends that the Bank's filing of the amended petition in the State Court Litigation asserting an amended fraudulent conveyance count against her was in violation of the Orders, thereby entitling her to damages for civil contempt. For the following reasons, the Court finds the Bank was not in contempt and declines to order any sanctions.

In the Tenth Circuit, a prohibitory provision of a settlement agreement approved by a court order cannot be enforced by civil contempt unless the prohibition is expressly set forth in a

18

court order. In *Consumers Gas & Oil*,[28] a settlement agreement prohibited the parties from publishing information about the settlement. In breach of the agreement, a party published information about the settlement, and civil contempt was sought for breach. The Tenth Circuit reversed the district court's finding of contempt. It stated, "Standing alone, a settlement agreement is nothing more than a contract; the imprimatur of an injunction is required to render it a consent decree enforceable through contempt."[29] Because the court order approving the settlement agreement did not expressly prohibit communications to the media, it could not be enforced by contempt.

In this case neither of the Orders set forth an express prohibition which was violated by the Bank. Both the Stipulation and the Settlement Agreement were approved by the Court without including in the respective orders any language enjoining conduct of the Bank or others. The Orders cannot be the basis for civil contempt as they lack the imprimatur of an injunction.

To the extent that Barbara Berg seeks attorney fees or other sanction based upon a theory other than civil contempt, the Court declines to so order. Based upon the testimony at the hearing and the lack of legal precedent, the Court finds that the Bank proceeded in good faith believing that it had the right to assert the amended fraudulent conveyance count against Barbara Berg.

For the foregoing reasons the Court denies the requested finding of contempt and declines to assess attorneys fees or other sanctions.

---

[28] *Consumers Gas & Oil, Inc. v. Farmland Indus. Inc.*, 84 F.3d 367 (10th Cir. 1996). *See Health Midwest Office Facilities Corp. v. Zipper (In re Zipper)*, 207 B.R. 695 (Bankr. D. Kan. 1997) (following *Consumers Gas & Oil*).

[29] *Consumers Gas & Oil, Inc.*, 84 F.3d at 370 (quoting *D. Patrick v. Ford Motor Co.*, 8 F.3d 455, 460 (7th Cir. 1993)).

The foregoing constitute Findings of Fact and Conclusions of Law under Rules 7052 and 9014(c) of the Federal Rules of Bankruptcy Procedure which make Rule 52(a) of the Federal Rules of Civil Procedure applicable to this matter. A judgment based upon this ruling will be entered on a separate document as required by Federal Rule of Bankruptcy Procedure 9021 and Federal Rule of Civil Procedure 58.

**IT IS SO ORDERED.**

### ###